280 P.2d 1060

Delpha R. SMITH, a widow, and Everest G. Smith, a widower, Plaintiffs and Respondents,

v.

Clare HOWARD and Marie Howard, husband and wife, and Charles Gerhauser, Defendants and Appellants.

No. 8154.

Supreme Court of Idaho.

March 2, 1955.

Caldwell, Alexanderson & Davis, Caldwell, for respondent.

Laurence N. Smith and Meek & Miller, Caldwell, for appellant.

KEETON, Justice.

This action was brought by respondents, owners of a two-thirds interest in certain improved real estate to have the property sold, the proceeds from the sale distributed and paid to the parties entitled thereto. Appellants Howard and wife own a one-third interest. The property cannot be partitioned without injury to the owners.

Appellants filed a cross-complaint alleging that the improvements on the premises

enhanced the value $20,000 and that they advanced $9,705.11 to construct such improvements; that $9,000 was furnished by funds other than those furnished by appellants. It was admitted by all the parties that the property could not be divided and that it should be sold; that a mortgage outstanding against the property on which there is a balance unpaid of $8,000, held by a man named Gerhauser, dated January 13, 1949, should be first paid.

In the cross-complaint appellants asked that from the proceeds of the sale the costs and mortgage be first paid; that the value of the alleged improvements placed upon said premises by appellants be ascertained and determined and paid to them, and the balance, if any, divided among the parties conformable to their respective interests.

The trial judge decided the matter adversely to the contention of appellants and decreed that from the proceeds of sale, after payment of the costs, the mortgage be paid, and the balance be distributed to the co-owners, one-third to Delpha R. Smith, one-third to Everest G. Smith, and one-third to Clare Howard and Marie Howard, husband and wife, appellants here. Defendants and cross-complainants, Howard and wife, appealed.

The only issue presented is whether the claimed $9,705.11 alleged to have been advanced and paid by appellants, in making the improvements, or some part of it, should be paid to them before the balance of the funds secured from the sale is distributed to the owners.

The property in question was in December, 1946, and January, 1947, deeded by the then owners to Earl T. Smith, now deceased, John Estep, Clare Howard and Ed Beck in equal parts. The deed to a part of the land described the grantees as a copartnership, doing business as Caldwell Sales & Commission Co. Thereafter on July 18, 1947, Beck and wife deeded their one-fourth interest to the other co-owners and each became the owner of an undivided one-third interest. Subsequent to July, 1947, Estep, Smith and appellants improved the property by the erection thereon of certain corrals, pens, livestock pavilions, sheds and other buildings, and commencing sometime in February, 1948, conducted a sales ring and auction business on the property as a copartnership, doing business as Caldwell Sales & Commission Co.

By two several instruments dated January 13, 1950, and March 21, 1950, Estep and wife contracted to sell and convey their interest to Everest G. Smith, one of the respondents here, and pursuant to said agreements did, on May 11, 1951, convey a one-third interest to him, and he assumed and agreed to pay one-third of the mortgage indebtedness to Gerhauser then outstanding. The contracts of sale from Estep and wife to Everest G. Smith were consented to by the remaining partners, namely Earl T. Smith and Clare Howard, and by an instrument in writing, dated April 7, 1950,

said Earl T. Smith and Howard accepted into the firm of Caldwell Sales & Commission Co., the respondent Everest G. Smith, the consent reading as follows.

"We, Earl T. Smith and Clare Howard, two of the partners named in the hereto attached contract between John W. Estep and Orral G. Estep, husband and wife, and Everest G. Smith, each for himself, says:

"That he has read the attached contract and agrees thereto and accepts into the firm of Caldwell Sales & Commission Company Everest G. Smith, party of the second part to said contract, and agrees that the partnership from now and henceforth operating said business under the firm name and style of Caldwell Sales & Commission Company shall consist of said Earl T. Smith, Clare Howard and Everest G. Smith; provided the said Earl T. Smith and Clare Howard shall be entitled to have and receive each an equal one-third of the profits of said business and each shall be liable and responsible for an equal one-third of the losses of said business, if any there be, and that the said Everest G. Smith shall be entitled to have and receive one-third of the profits of said business and he shall hereafter be responsible for an equal one-third of the losses of said business; and the said business shall hereafter be conducted and maintained at the same place it has heretofore been conducted

and maintained and in the same manner as heretofore conducted and maintained, except so far as altered and changed by the said contract hereto attached.

"Dated at Caldwell, Idaho, this 7th day of April, 1950.

Signed
     Earl T. Smith
     Clare Howard"

Earl T. Smith died October 1, 1951, and his interest in the property was by a decree dated May 4, 1953, distributed to Delpha R. Smith, one of the respondents here.

Appellants contend that on and between February 5, 1947 and May 18, 1949, they expended the sum of $9,705.11 in making the improvements on the partnership property for which expenditure an allowance should be made to them from the proceeds of the sale. In furtherance of their claim, Howard testified that after the property had been acquired by Estep, Smith and himself, he advanced money in payment of labor and material, evidenced by a series of checks, all signed by Clare Howard, Clerk, Clare Howard, which total the amount of his claim. One of the claimed advances dated February 5, 1947, was, he testified, advanced by him some five months before the present partners or their immediate predecessors became the owners of the property, and checks totaling the sum of $487 were paid by him subsequent to the Gerhauser mortgage dated January 13, 1949. The improvements were placed on the premises prior to the mortgage.

None of the present partners or their predecessors in interest were ever advised, prior to the bringing of this action, of the claimed expenditures, or asked to contribute their part. No claim for such advances was ever presented by appellants against the other partners. The present parties to this action, or their predecessors in interest, never were advised of said claimed advances until the cross-complaint in this action was filed, December 2, 1953, which would be nearly seven years after the first claimed expenditure.

One check, for which appellants claim credit, in the sum of $446.77 was shown to contain an item for $364.75 owed personally by appellant and not chargeable to any improvements constructed on the property. Another check received in evidence which appellant claims was an advance to improve the property, dated June 4, 1949, was proved to have been for other purposes, and was without dispute shown to have been repaid.

During all times prior to May 18, 1949, that appellants claimed to have made the advances for which they now seek credit, Howard was in charge of the books of the Caldwell Sales & Commission Co. as bookkeeper, and also clerk of the sales conducted by the partnership.

The witness testified that some money had been borrowed by the partnership from a Mr. Flynn to make the improvements as the work progressed. However, no amounts of money so borrowed, or date when borrowed, or what became of the money is shown, except that witness testified it was used up.

The money borrowed from Gerhauser on January 13, 1949, was, according to the testimony of the witness, used to pay some money owed Flynn (how much is not shown) and a lumber bill (amount not shown).

While appellant Clare Howard was until May 18, 1949 the bookkeeper of the enterprise, the books were not produced, and the witness testified, although a partner and clerk of the auction sales, he did not know where the books were.

Appellants do not contend that they ever advised the other partners, or their predecessors in interest, of the money claimed to have been advanced in furtherance of the common enterprise, nor that the other partners at any time were asked to make any individual contribution toward the claimed cost of construction, or to contribute their part, or otherwise finance the common business.

When one of the partners, Estep, sold his interest to Everest G. Smith and the said Smith assumed and agreed to pay one-third of the indebtedness owed Gerhauser, the purchaser was not advised by appellants that there was any indebtedness of the partnership to appellants to be assumed by him, or that there was a lien on the property other than the Gerhauser mortgage.

After the death of the partner, Earl T. Smith, his widow was not advised of any

such claim and as above stated none of the partners in interest, other than the appellant Clare Howard, prior to the time the cross-complaint was filed knew, or had any reason to know, anything concerning the alleged claim of appellants.

While it is admitted by the pleadings that the property, because of the improvements, had been enhanced in value to the extent of approximately $20,000, the amount of money that was borrowed from Flynn by the partnership and contributed toward said improvements was not shown.

In deciding the issue, the trial court found that appellants Clare Howard and Marie Howard, husband and wife, or either of them, made no advances for which they now have a claim in or against said real property except to the extent of the undivided one-third interest therein.

This finding is assigned as error by appellants for the following alleged reasons: It having been admitted that the improvements on the property enhanced the value of the premises $20,000; that $9,000 came from the mortgage loan signed by all of the then owners; that there is no explanation on the part of respondents to contradict the evidence of appellants as to the source of the money used in constructing the improvements other than the advances claimed to have been made by appellants. Appellants also attack the finding as indefinite and uncertain; that said finding amounts to no more than a conclusion of law and does not conform to the pleadings.

Appellants claim that having testified to having made the advances, there being no direct contradiction to such testimony and no reimbursement having been shown, that it was the duty of the trial court to make a finding favorable to appellants.

■ The finding is sufficient to negative the contention of appellants that any advances as claimed were made, and was in substance a finding that appellants advanced no more than their share to the common enterprise.

■ The trial court having found that appellants have no claim against the property, there was no necessity for finding upon issues collateral to the matter to be determined. If further findings were made, it must be presumed that such findings would be adverse to appellants' contention, and the findings in substance met the issue presented, Ridgeway v. Logan, 205 Okl. 603, 239 P.2d 778. The finding attacked states the legal equivalent sufficient to show that appellants had made no advances to improve the property as claimed by them. 64 C.J. 1246, Sections 1092 and 1093.

Appellants contend that the evidence of appellant Clare Howard in furtherance of the claim was uncontradicted by direct evidence.

■ While there was no direct contradiction of parts of the witness' testimony, the witness was sufficiently impeached and his testimony so contradictory in itself, that the trial court was warranted in disregarding his evidence.

When the improvements were constructed on the property appellant Clare Howard was in charge of the construction and supervised the same, and the carrying out of the plans of construction was supervised by him. In other words, he actively managed the partnership affairs.

The evidence further disclosed that the witness remained silent for a period of nearly seven years when it was his duty to speak and the two remaining partners against whom he now asserts the claim have been materially mislead to their prejudice.

■■ A partnership relation is fiduciary in character and imposes on each member of the enterprise the duty of dealing with the others interested with him in the utmost good faith with respect to partnership affairs. In appellant Clare Howard's position as bookkeeper and sales clerk, and supervisor of construction, and while actively in charge of the partnership business, it was his duty to advise the other partners of appellants' claimed advances to the common enterprise, if any were made. The original partners and their successors in interest were entitled to rely on him and to be fairly dealt with.

■ We are of the opinion that the findings of the trial court are supported by the evidence and that the correct conclusion was reached. Judgment is affirmed. Costs to respondents.

TAYLOR, C. J., and PORTER and SMITH, JJ., and SUTPHEN, D. J., concur.