412 P.2d 888

**Gladys Gloria FOSTER, Individually, and as Executrix of the Estate of Harry T. Foster, Deceased, Appellant,**

**v.**

**Harry F. AMES, Appellee.**\*

**No. 2 CA–CIV 92.**

Court of Appeals of Arizona.

April 12, 1966.

---

\* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 8332. The matter was referred to this Court pursuant to A.R.S. Section 12–120.23.

dissolution of a partnership. Appellant appeared as defendant below and appellee as plaintiff.

Appellee Ames and one Harry T. Foster operated a small business establishment in Douglas, Arizona, known as "The Round-up" as a partnership. On August 26, 1962, Harry T. Foster died and his widow, appellant herein, was appointed as Executrix of his estate. On December 22, 1962, appellee filed a complaint against Mrs. Foster, individually, and as Executrix of the Estate of Harry T. Foster, Deceased, alleging the existence of an agreement to buy the decedent's share in the partnership and asking enforcement thereof. In addition, appellee asked that an accounting of partnership assets be conducted and that a receiver be appointed for the sale and distribution of such assets. Appellant filed an answer and counterclaim alleging that the business had been conducted since Mr. Foster's death by the appellee for his own benefit, that no accounting of profits had been made since Mr. Foster's death, and in relief asked that the business be closed and appellee enjoined from continuing therein, that an accounting be made and for damages in the amount of $10,000.00. The matter was tried to the court without a jury and on July 15, 1963, judgment was entered holding that the partnership was dissolved by the death of Mr. Foster, that the surviving partner and heirs or personal representative of the decedent were entitled to an accounting, that to effectuate the dissolution of partnership assets it would be necessary to appoint a receiver, and a receiver was thereby appointed. The judgment further enumerated the duties of the receiver as including the gathering of assets, the sale thereof by public sale to the highest bidder under terms prescribed by the court, and an accounting of the proceeds.

The receiver published notice of the sale in accordance with the court decree and such sale was held on August 5, 1963. Both parties herein appeared personally and by their attorneys and the court itself conducted the sale. Written bids were opened and after some dispute regarding assets to

Moore, Vlahovich, Greenwood & Smitherman, by Daniel E. Moore, Bisbee, for appellant.

Riley & Allen, by Richard J. Riley, Bisbee, for appellee and receiver.

KRUCKER, Chief Judge.

This is an appeal from an order approving the final accounting of a receiver and directing the payment of claims and distribution of assets remaining from the

be included in the sale, specifically, a bank deposit belonging to the partnership, the written bids were withdrawn by the court and bidding reopened. Several bids were made, resulting in a final high bid of $4,-650.00 by appellee. The highest written bid was $3,926.00. Appellant filed written objections alleging irregularities in the sale and moved the court to set aside and vacate the sale. However, on August 13, 1963, the court entered an order directing that the partnership assets be sold to appellee for the sum of $4,650.00, subject to appellee obtaining a transfer of the Series 6 Liquor License to him.

Appellee succeeded in obtaining a transfer of the Series 6 Liquor License and the receiver petitioned the court for an order confirming sale of the assets to appellee and for an order directing the court clerk to release funds obtained from the sale. The court issued such order confirming the sale on September 18, 1963, apparently ex parte, since the record fails to disclose that notice was given to appellant or appellee. On September 30, 1963, the receiver petitioned the court for hearings on his accounting and on October 3, 1963, filed a supplemental account and petition for distribution. Appellant filed written objections to the receiver's report based on alleged irregularities of proceedings and the objection that the confirmation of sale was conducted ex parte to appellant. Thereafter, on October 28, 1963, the court entered its order approving the receiver's final accounting and directing that claims be paid and remaining assets distributed.

Appellant's notice of appeal was filed on December 24, 1963, stating that appeal was being taken "from the Order Approving Claims, Settling Account and Order for Distribution entered in this action on October 28, 1963." Nine errors allegedly committed by the lower court are assigned by appellant, all concerning sale of the partnership assets. By this appeal, appellant seeks to have such sale set aside and vacated.

■ The record discloses that the sale was conducted in open court on August 5, 1963, both parties being present; that an order was issued on August 13, 1963, directing sale of the partnership assets to appellee; and that the sale was confirmed upon the receiver's petition on September 18, 1963. In view of the decision of this Court in Hurst v. Hurst, 1 Ariz.App. 603, 405 P.2d 913 (1965), and cases cited therein, it cannot be disputed that an order confirming a receiver's sale of partnership property is a final order from which an appeal lies. Thus, it appears to this Court that appellant's remedy was appeal from the order of September 18, 1963, confirming sale of the partnership assets to appellee. However, appellant asserts that this order confirming sale was issued ex parte and, therefore, the first opportunity provided appellant to object to such confirmation was upon hearings held on October 28, 1963, on the receiver's petition for approval of his accounting.

■■ There is a dispute of authority regarding the necessity of notice to interested parties on hearings confirming a receiver's sale. 75 C.J.S. Receivers § 243b(1) (1952), at page 871, states:

"In accordance with the difference of opinion as to the necessity of notice of applications to a court by its receiver for instructions or directions, * * * there is authority, on the one hand, for the view that the confirmation of a receiver's sale should be on notice to the parties who have appeared in the receivership suit, and, on the other hand, that no notice thereof is necessary, since the parties to the suit must take notice of motions made therein."

We believe the facts of this case bring it within the rule that "parties to the suit must take notice of motions made therein." Appellant was present during the sale and filed written objections thereto. Written objections were also filed on October 14, 1963, to the receiver's account and petition for distribution which contained an objection to the order confirming sale of the partnership assets to appellee. Although the confirma-

tion was conducted ex parte, these written objections indicate that appellant had actual notice of the confirmation and appeal should have been taken within sixty days therefrom, in accordance with Rule 73(b), Arizona Rules of Civil Procedure, 16 A.R.S.

■ On timely motion made, a court may modify or vacate an order confirming a receiver's sale. However, 75 C.J.S. Receivers, supra, at page 875, states:

> "Such power should be exercised, * * * only on sufficient cause shown and where the matter appeals to an exercise of sound legal discretion. It may be exercised when mistake, inadvertence, or improvidence is made to appear. While a mere increase of price or inadequacy of price at the time of sale will not alone justify the court in setting aside an order of confirmation, such inadequacy or increase in connection with unfairness, injustice, or inequity in making the sale is sufficient even where the purchaser has acted in good faith."

Appellant strenuously maintains that the inadequacy of price, plus the numerous alleged irregularities both prior to and subsequent to the sale, provide sufficient basis for vacating and setting aside the sale in accordance with the above principles. Basically, it appears that appellant seeks to invalidate the sale because of the alleged inadequacy of price and seeks a resale.

■ 50 C.J.S. Judicial Sales § 15 (1947), at page 600, states that "The method of conducting a judicial sale rests largely in the discretion of the court ordering the sale." In addition, confirmation of a judicial sale also lies within the sound discretion of the court and it is generally the duty of the court to ratify such sale where it was fairly made. 50 C.J.S. Judicial Sales § 28d (4) (1947). Confirmation of the sale cures all defects and irregularities "except such as are founded on grounds materially affecting the validity of the sale, such as fraud or a want of jurisdiction." 50 C.J.S. Judicial Sales § 29 (1947), page 622; 75 C.J.S. Receivers § 244 (1952).

In the case before us, the sale was conducted in open court under the control and direction of the court itself. Sufficient notice of the pending sale was published in local newspapers and it can be reasonably concluded that such received sufficient recognition from interested parties. Written bids were submitted, the highest of which was $3,926.00. Upon the substitution of open bidding for the written bids, the highest bid obtainable was that of the appellee for $4,650.00. Although some merit may exist in appellant's assignments of alleged irregularities, we cannot conclude that the record sustains the contention that appellant suffered any injury thereby. Appellant urges that her injury resulted from the fact that the assets were sold at approximately one-third to one-fourth of their true value based on evidence before the court. It is recognized that an appraisal of partnership assets was conducted for estate purposes regarding the decedent, Harry T. Foster. But even in the light of this fact, the record firmly discloses that the highest and best price obtainable was derived from the sale. 50 C.J.S. Judicial Sales § 59a (1947), at pages 678–679, states:

> "Although there is some authority to the contrary, ordinarily a judicial sale will not be set aside, even though the price is grossly inadequate, unless the inadequacy is so great as in itself to raise a presumption of fraud, unfairness, or mistake, or to shock the conscience of the court, and a resale may reasonably be expected to result in a substantially higher price."

■■ We cannot conclude that the record discloses any fraud, mistake or inadvertence, or that any purpose would be served in conducting a resale of the partnership assets, or that a better price would be obtained thereby. In accordance with these findings, we hold that the court acted within its discretion in confirming sale of partnership assets to appellee, that no abuse of such discretion is evident in the record, that no prejudicial error sufficient to overcome that judgment occurred, that an order con-

**210**

firming a receiver's sale of partnership property is a final order from which an appeal lies, and that appellant's failure to prosecute a timely appeal therefrom constitutes the matter res judicata. Hurst v. Hurst, supra.

We also have before us a petition by the receiver asking for additional costs and reasonable attorneys fees caused by and resulting from this appeal. We believe the matter is more properly before the lower court. In dictum of the Arizona Supreme Court in McRae v. Dodt, 50 Ariz. 336, 340–341, 72 P.2d 444, 446 (1937), it was noted:

> "The usual rule is that any person who claims compensation for services performed, under the direction and by authority of a court, must make application to that court for his compensation, * * *."

We agree and believe that the trial court is in a better position to know the necessity for the services performed in this court by the receiver and his attorney and to assess their reasonable value.

The judgment is affirmed and the case remanded for further proceedings on the receiver's petition for additional costs and attorneys fees.

MOLLOY, J., and JACK G. MARKS, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.