NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IMH SPECIAL ASSET NT 168 LLC, et al., *Plaintiffs/Appellees*,

*v.*

DAVID P. MANIATIS, *Defendant/Appellant.*

---

DAVID P. MANIATIS, *Appellant,*

*v.*

DANIEL WILLIAMS, *Appellee.*

---

IMH SPECIAL ASSET NT 168 LLC, et al.,
*Real Parties in Interest/Appellees*,

---

IMH SPECIAL ASSET NT 168 LLC, et al., *Plaintiffs/Appellees*,

*v.*

MW2 INVESTMENTS, LLC, et al., *Intervenors/Appellants.*

No. 1 CA-CV 19-0454
1 CA-CV 19-0494
1 CA-CV 20-0022
(Consolidated)

FILED 4-8-2021

---

Appeal from the Superior Court in Maricopa County
No. CV2010-010943
CV2010-010990
(Consolidated)
The Honorable James D. Smith, Judge

**AFFIRMED**

---

COUNSEL

Snell & Wilmer LLP, Phoenix
By Christopher H. Bayley, Benjamin W. Reeves, James G. Florentine
*Counsel for Plaintiffs/Appellees IMH Special Asset NT 161, LLC and IMH Special Asset NT 168, LLC*

Ronald Warnicke PLC, Phoenix
By Ronald E. Warnicke
*Co-Counsel for Defendant/Appellant Maniatis*

Treon & Aguirre PLLC, Phoenix
By Richard T. Treon
*Co-Counsel for Defendant/Appellant Maniatis*

Jeffrey M. Proper PLLC, Phoenix
By Jeffrey M. Proper
*Counsel for Intervenors/Appellants MW2 Investments LLC and Robert Semple as Trustee of the NDM Trust*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maria Elena Cruz joined.

---

**P E R K I N S**, Judge:

¶1 David Maniatis appeals the superior court's judgment and denial of his motions to vacate a receivership order pursuant to Arizona Rule of Civil Procedure 60. MW2 Investments LLC ("MW2") and Robert Semple (collectively "Intervenors") appeal the court's denial of their Rule 60 motion for new trial. For the following reasons, we affirm.

2

## FACTUAL AND PROCEDURAL BACKGROUND

**I.          IMH Obtains Judgment Against Maniatis**

**¶2**          In April 2010, IMH Special Asset NT 168, LLC and IMH Special Asset NT 161, LLC (collectively "IMH") initiated deficiency actions against Maniatis and others to collect on two loans. The superior court found that Maniatis defaulted on the loans and entered summary judgment in IMH's favor ("Original Judgment"). Maniatis timely appealed the Original Judgment.

**¶3**          In December 2016, we vacated and remanded the Original Judgment in part. *See IMH Special Asset NT 168, LLC v. Aperion Cmtys., LLLP* ("*Aperion*"), 1 CA-CV 13-0131, 2016 WL 7439001 (Ariz. App. Dec. 27, 2016) (mem. decision). We held the superior court "correctly entered summary judgment for [IMH] regarding the fact of [Maniatis's] defaults" but "a genuine dispute of material fact regarding the default balances" existed. *Id.* at *6, *10, ¶¶ 31, 53. We remanded the case to calculate the default balances owed to IMH, noting that "even if [IMH does] not prove its claimed deficiency balances upon remand, substantial deficiency balances will still exist under [Maniatis's] version of the facts." *Id.* at *6, ¶ 33. Because we held the superior court erred in granting summary judgment for the default balances, we dismissed all appeals from post-Original Judgment orders as moot. *Id.* at *10, ¶ 53.

**¶4**          IMH moved for reconsideration of *Aperion*. We granted in part to clarify that any modified judgment on remand shall be ordered *nunc pro tunc* to the date of the Original Judgment for calculating default interest.

**¶5**          The superior court then held two trials to establish (1) the deficiency balances Maniatis owed IMH and (2) the amounts IMH recovered on the Original Judgment. After conducting both trials, the superior court entered judgment in IMH's favor for $36,229,585.70 ("Final Judgment").

**II.          Collection on the Original Judgment Pending Appeal**

*A. The Superior Court Appoints Two Receivers*

**¶6**          Maniatis failed to obtain a stay pending his appeal of the Original Judgment, so IMH pursued collection efforts. IMH and Maniatis entered a court-approved stipulation requiring Maniatis to transfer all ownership interests in his closely held companies to a limited liability

company created for receivership ("Stockholder LLC"). The superior court then appointed a receiver over Stockholder LLC.

**¶7**          IMH sought appointment of a second receiver after Maniatis breached the stipulation. Facing a delay after Maniatis's then-counsel withdrew, IMH renewed its application for a second receiver by filing an "emergency motion for an *ex parte* interim receiver" ("Receiver Application"). The superior court granted IMH's application and appointed MCA Financial Group, Ltd. ("MCA Financial"), by and through Keith Bierman (collectively "Receiver"), as receiver over all property owned or controlled by Maniatis ("Receivership Order").

**¶8**          The court eventually amended the Receivership Order to include a non-exhaustive list of companies and assets Maniatis owned or controlled, including Seagoville Investments, LLLP ("Seagoville") and the NDM Trust.

### B. Maniatis and Intervenors Attempt to Thwart the Receivership

**¶9**          The Receiver discovered that before the formation of the receivership, Maniatis executed a purchase and sale agreement ("Seagoville PSA") on behalf of Seagoville to sell property in Texas to Equitable Real Estate Company, LLC ("Equitable Real Estate"). Seagoville failed to timely close and Equitable Real Estate sued for specific performance of the Seagoville PSA.

**¶10**          Instead of litigating, the Receiver, Equitable Real Estate, and IMH jointly moved the superior court to (1) allow the Receiver to exercise Seagoville's rights as seller under the Seagoville PSA and (2) authorize IMH to purchase Equitable Real Estate's interest under the Seagoville PSA. The superior court granted the motion ("Seagoville Sale Order") and completed the transaction pursuant to the Seagoville PSA. IMH eventually sold the Texas property and transferred the proceeds to the receivership estate.

**¶11**          Shortly after the superior court issued the Seagoville Sale Order, Maniatis attempted to appoint Semple as trustee of the NDM Trust. Claiming authority over the NDM trust, Semple moved to vacate the amended Receivership Order. Alternatively, Semple asked the court to exclude the NDM trust from the receivership. The superior court denied Semple's request, declaring Maniatis's "attempt to install Mr. Semple as a successor Trustee is void because it violates the Receivership Order . . . and . . . Arizona Trust Code." The court also prohibited Semple from filing anything in the receivership proceedings absent court permission.

**¶12**        Undeterred, Semple then purchased membership interests in MW2 and attempted to intervene in the receivership proceedings on MW2's behalf. The superior court denied MW2's request, explaining that "if MW2 has an interest in a receivership asset, [such as the Seagoville property or its sale proceeds,] there is a process for MW2 to protect that interest by submitting a claim." The court similarly prohibited MW2 from filing anything in the receivership proceedings absent court permission.

**¶13**        MW2 submitted a claim to the Receiver, seeking a distribution from the receivership estate. The Receiver denied MW2's request. The superior court approved the Receiver's proposed final distribution of estate assets ("Wind-Up Order") and discharged the Receiver.

### C. MW2 Brings Separate Action Against IMH

**¶14**        After numerous failed intervention attempts, MW2 sued IMH. MW2 challenged several of the superior court's post-Original Judgment receivership orders and demanded a share of the Seagoville sale proceeds. The superior court dismissed MW2's action and we affirmed. *See MW2 Invs. LLC v. IMH Special Asset NT 168 LLC* ("*MW2 Investments*"), 1 CA-CV 18-0271, 2019 WL 6910436 (Ariz. App. Dec. 19, 2019) (mem. decision).

### III.        **Maniatis and Intervenors Seek Relief from Final Judgment**

**¶15**        Maniatis filed several motions seeking relief from the Final Judgment pursuant to Rules 59 and 60. Relevant to this appeal, Maniatis asked the court to vacate the Receivership Order for lack of jurisdiction and denial of due process ("First Rule 60 Motion"). Maniatis then asked the court to void the Receivership Order for fraud on the court ("Second Rule 60 Motion").

**¶16**        Intervenors also moved the superior court to vacate the Final Judgment ("Post-Judgment Motion"), repeating Maniatis's jurisdictional arguments. In the Post-Judgment Motion, Intervenors sought to "incorporate by reference [Maniatis's First and Second Rule 60] Motions in their entirety."

**¶17**        The superior court denied all of Maniatis and Intervenors' motions. As to Maniatis's First Rule 60 Motion, the court explained "[i]t would be an improper horizontal appeal for [it] to review the propriety of predecessor judicial officers' orders from February 2014 through April 2015." As to Maniatis's Second Rule 60 Motion, the court noted that Maniatis's fraud on the court argument "is a variation of the same argument

[he] has raised—and judicial officers have rejected—throughout this matter."

**¶18** The superior court declined to address Intervenors' arguments raised in the Post-Judgment Motion. The court instead noted "Semple is not the trustee of NDM Trust, so he lacks authority to argue on its behalf" and "[Intervenors] violated the Court's earlier orders requiring them to obtain a leave of Court before filing [more] papers."

**¶19** Maniatis and Intervenors timely appealed the superior court's Final Judgment and order denying their Rule 60 motions, which are consolidated into this appeal. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A).

## DISCUSSION

**¶20** We consider four issues on appeal: (1) the superior court's denial of Maniatis's First Rule 60 Motion; (2) the superior court's denial of Maniatis's Second Rule 60 Motion; (3) the superior court's entry of the Final Judgment *nunc pro tunc*; and (4) the superior court's denial of Intervenors' Post-Judgment Motion.

**¶21** As an initial matter, we do not address the numerous arguments raised by Maniatis and Intervenors challenging the Receivership Order. The time to appeal the Receivership Order from 2014 has long passed. *See* A.R.S. § 12-2101(A)(5)(b) (court order appointing a receiver must be appealed within thirty days); *see also Sato v. First Nat'l Bank of Ariz.*, 12 Ariz. App. 263, 266 (App. 1970) (failure to appeal order appointing a receiver precludes a party from later raising issue on appeal from final judgment). We therefore lack jurisdiction to address challenges to the Receivership Order. *See In re Marriage of Thorn*, 235 Ariz. 216, 218, ¶ 5 (App. 2014).

**¶22** We similarly decline to address challenges to the Receiver's actions taken pursuant to the Receivership Order, including the Seagoville Sale Order and Wind-Up Order. An order confirming a receiver's actions is an appealable order. *Foster v. Ames*, 3 Ariz. App. 206, 208 (App. 1966). But Maniatis and Intervenors' failure to timely appeal these orders precludes them from attacking the orders' validity on appeal. *See Hurst v. Hurst*, 1 Ariz. App. 603, 605 (App. 1965).

## I.  Maniatis's Claims

¶23 Maniatis raises several challenges to the superior court's denial of his First and Second Rule 60 Motions. He argues the superior court erred in denying his First Rule 60 Motion to vacate the Receivership Order for lack of jurisdiction. Maniatis then argues the court erred in denying his Second Rule 60 Motion alleging fraud on the court. Finally, Maniatis argues the court improperly entered the Final Judgment *nunc pro tunc*.

### A.  Maniatis's First Rule 60 Motion

¶24 Maniatis first contends the Receivership Order is void because the superior court lacked subject matter jurisdiction, lacked personal jurisdiction, and failed to hold a hearing after entering the Receivership Order. We review the denial of a Rule 60(b)(4) motion *de novo*. *Laveen Meadows Homeowners Ass'n v. Mejia*, 249 Ariz. 81, 84, ¶ 10 (App. 2020).

¶25 Rule 60(b)(4) allows a party to seek relief from a "void" final judgment or order when "the court entering it lacked jurisdiction (1) over the subject matter, (2) over the person involved, or (3) to render the particular judgment or judgment entered." *Martin v. Martin*, 182 Ariz. 11, 15 (App. 1994). Maniatis bears the burden of demonstrating the challenged orders are void. *See Cockerham v. Zikratch*, 127 Ariz. 230, 235 (1980). The scope of an appeal from a denial of a Rule 60 motion is restricted to the questions raised by the motion to vacate. *See Hirsch v. Nat'l Van Lines, Inc.*, 136 Ariz. 304, 311 (1983).

¶26 Maniatis argues the superior court lacked subject matter jurisdiction to appoint the Receiver. We disagree. Subject matter jurisdiction is a court's statutory or constitutional authority to hear a certain type of case. *Sheets v. Mead*, 238 Ariz. 55, 57, ¶ 9 (App. 2015). The superior court has statutory authority to appoint a receiver. A.R.S. § 12-1241. The superior court may likewise appoint a receiver as an equitable remedy to protect property subject to pending litigation. Ariz. R. Civ. P. 66. The superior court thus had subject matter jurisdiction over the proceeding and parties.

¶27 Maniatis's next argument, that the superior court lacked personal jurisdiction over himself and his assets, also fails. Maniatis failed to assert this defense by initial motion or to plead it in his answer. *See* Ariz. R. Civ. P. 12(h). He therefore waived this defense. *See id.* (party waives personal jurisdiction defense by omitting it from a motion or responsive pleading); *see also Tarr v. Superior Court*, 142 Ariz. 349, 351 (1984)

(participating in a pending case, other than to contest jurisdiction, subjects defendants to the court's jurisdiction).

**¶28**          Finally, Maniatis argues the superior court failed to satisfy the "additional jurisdictional requirements" necessary to create a receivership because Rule 66 requires the court to set a hearing within ten days of appointing a receiver *ex parte*. We find no such requirement. The plain language of the statute expressly states "[i]f a party applies for appointment of a receiver without notice, the court may either grant the application *or* . . . order the applicant to serve the adverse party and set a hearing." Ariz. R. Civ. P. 66(a)(3) (emphasis added). While the superior court was under no obligation to set a hearing, the court still offered Maniatis an opportunity to contest the appointment by requesting a hearing—an opportunity Maniatis failed to seize.

**¶29**          The superior court did not err in denying Maniatis's First Rule 60 Motion.

### B. *Maniatis's Second Rule 60 Motion*

**¶30**          Maniatis next contends the superior court erred by denying his Second Rule 60 Motion seeking to vacate the Receivership Order for fraud on the court. The superior court "enjoy[s] broad discretion when deciding whether to set aside judgments," and we review its ruling for an abuse of discretion. *See Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, 364, ¶ 24 (App. 2015). We will affirm "unless undisputed facts and circumstances require a contrary ruling." *City of Phoenix v. Geyler*, 144 Ariz. 323, 330 (1985) (internal quotation marks omitted).

**¶31**          Rule 60(d)(3) permits the court to set aside a judgment for fraud on the court "[w]hen a party obtains a judgment by concealing material facts and suppressing the truth with the intent to mislead the court." *Clark v. Kreamer*, 243 Ariz. 272, 275, ¶ 13 (App. 2017) (quoting *Cypress on Sunland Homeowners Ass'n v. Orlandini*, 227 Ariz. 288, 299, ¶ 42 (App. 2011)). "[T]he moving party must prove the fraud by clear and convincing evidence." *Id.*

**¶32**          At the outset, we decline to address several of Maniatis's arguments. Maniatis previously argued that IMH committed fraud on the court because (1) IMH's counsel failed to disclose a series of charging order statutes in the Receiver Application; (2) IMH and the Receiver entered a joint defense agreement; and (3) the Receiver's counsel previously represented an IMH subsidiary in unrelated matters. The superior court already rejected these arguments before Maniatis's Second Rule 60 motion,

and we will not address those arguments here. *See Budreau v. Budreau*, 134 Ariz. 539, 541 (App. 1982) ("[Rule 60(b)] cannot be used as a substitute for appeal to relitigate issues which have already been finally determined.").

**¶33** Maniatis broadly argues that IMH committed fraud on the court by discussing "background facts and pleadings" with MCA Financial before the superior court issued the Receivership Order. But Maniatis fails to show how this amounted to "the most egregious conduct involving a corruption of the judicial process itself." *See Alvarado v. Thomson*, 240 Ariz. 12, 16, ¶ 17 (App. 2016) (quoting *Lake v. Bonham*, 148 Ariz. 599, 601 (App. 1986)). And the fact that IMH failed to disclose its communications with MCA Financial does not by itself amount to fraud on the court. *See, e.g., id.* at 17, ¶ 23 n.5 (failure to disclose material information does not amount to fraud on the court).

**¶34** Maniatis next contends the Receiver breached its duty to act as a neutral officer of the court because it received payment from IMH. This contention fails for several reasons. First, the superior court was fully aware the Receiver acted in IMH's interest as a judgment creditor; the Receivership Order directed the Receiver to do just that. Second, the Receivership Order expressly provided that IMH may reimburse the Receiver for its fees and expenses. Nothing about this arrangement is "secret" as Maniatis alleges. Third, the court approved all funds IMH advanced to the Receiver to pay for the costs of the receivership estate. And Maniatis never objected.

**¶35** In Maniatis's final challenge to the superior court's denial of his Second Rule 60 Motion, he claims IMH's failure to disclose its prior business relationship with MCA Financial prevents MCA Financial from serving as receiver in the present case. To support this argument, Maniatis notes IMH hired MCA Financial as a consultant during a bankruptcy proceeding in 2013. Other than highlighting IMH's previous engagement with MCA Financial and asserting that this engagement made "[MCA Financial] beholden to [IMH] for its fees," Maniatis provides no support for how this alleged nondisclosure amounted to fraud on the court. *See, e.g., McNeil v. Hoskyns*, 236 Ariz. 173, 178, ¶ 23 (App. 2014) (even a "false statement to the court about a matter in dispute rarely will constitute a fraud on the court").

**¶36** The superior court did not err in denying Maniatis's Second Rule 60 Motion.

### C. Final Judgment

**¶37**    Maniatis next argues the entirety of the superior court's rulings are void because we partially vacated the Original Judgment in *Aperion*. This is essentially the same failed argument that MW2 raised in *MW2 Investments*. *See* 1 CA-CV 18-0271, at *5, ¶¶ 22–24.

**¶38**    In *Aperion*, we held that although IMH was entitled to summary judgment with respect to Maniatis's defaults, questions of fact remained about the balance owed. 1 CA-CV 13-0131 at *5–6, ¶¶ 29–30. We then vacated the Original Judgment and remanded the case, directing the superior court to determine the amount owed. *Id.* at *6, ¶¶ 30–33. We reasoned "even if [IMH does] not prove [its] claimed deficiency balances upon remand, substantial deficiency balances will still exist even under [Maniatis's] version of the facts." *Id.* at *6, ¶ 33. IMH sought reconsideration with this court and we ordered that any judgment entered on remand be entered *nunc pro tunc* to the date of the Original Judgment.

**¶39**    Maniatis's argument that IMH "must literally . . . begin [its] collection efforts anew" is irreconcilable with our decision in *Aperion*. We expressly held that IMH's "judgment-collection efforts *must* be considered as they apply to [the] undisputed amounts" Maniatis owed IMH. *Id.* (emphasis added). Because IMH was still entitled to a "substantial deficiency balance," this court's prior ruling did not vacate the Receivership Order or its subsequent actions as Maniatis contends. *Id.*

**¶40**    Maniatis further claims the *nunc pro tunc* doctrine prohibits the superior court from making these types of changes. Maniatis cites no authority—and we have found none—for the proposition that the doctrine of *nunc pro tunc* prevents the superior court from entering judgment for purposes of calculating default interest. Under Rule 58(b)(2)(a), the superior court may enter judgment *nunc pro tunc* "in such circumstances on such notice as justice may require." We decline to interpret this language as Maniatis requests.

**¶41**    We reject Maniatis's claims and hold the superior court did not err in issuing its Final Judgment.

### D. Waived Arguments

**¶42**    Maniatis fails to develop his argument concerning the order discharging the receiver over Stockholder LLC. We therefore decline to address it. *See* ARCAP 13(a)(7); *see also Boswell v. Fintelmann*, 242 Ariz. 52,

54, ¶ 7 n.3 (App. 2017) (failure to develop and support conclusory arguments waives them).

### E. Judicial Notice

**¶43**        After filing his opening brief, Maniatis requested that we take judicial notice of several of IMH's parent corporation's filings with the Securities and Exchange Commission and the United States Bankruptcy Court for the District of Delaware. We deferred ruling on Maniatis's motion until ruling on the merits of this appeal. We deny Maniatis's motion because the material is irrelevant to our resolution of this appeal.

## II.        Intervenors' Claims

**¶44**        Intervenors argue the superior court erroneously denied their Post-Judgment Motion to vacate the Final Judgment. We review the superior court's ruling on a Rule 60(b) motion for an abuse of discretion, *Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 108, ¶ 35 (App. 2017), but review whether an order is void *de novo*. *BYS Inc. v. Smoudi*, 228 Ariz. 573, 578, ¶ 18 (App. 2012).

### A. Horizontal Appeal Doctrine

**¶45**        Intervenors first contend the superior court erred in applying the horizontal appeal doctrine. But this challenges the superior court's denial of Maniatis's First Rule 60 Motion—not the court's denial of Intervenors' Post-Judgment Motion. Even assuming, without deciding, that Intervenors may challenge the denial of Maniatis's First Rule 60 Motion, which they purport to have incorporated by reference, the superior court did not err in applying the horizontal appeal doctrine. Because Maniatis asked a trial judge to review an earlier trial judge's decision in the same matter, and Maniatis failed to present new evidence justifying review, the superior court did not err by declining review. *See Powell-Cerkoney v. TCR-Mont. Ranch Joint Venture, II*, 176 Ariz. 275, 278–79 (App. 1993) ("We criticize horizontal appeals because they waste judicial resources . . . .").

### B. Additional Arguments

**¶46**        Intervenors raise three additional arguments in passing to support their claims that the superior court erred in denying their Post-Judgment Motion. They contend that (1) IMH committed extrinsic fraud; (2) Receiver breached its fiduciary duty; and (3) the superior court lacked subject matter jurisdiction.

¶47 First, Intervenors argue that IMH committed extrinsic fraud. Extrinsic fraud includes "deception practiced by the successful party in purposely keeping his opponent in ignorance." *Bates v. Bates*, 1 Ariz. App. 165, 168 (App. 1965). The party seeking relief from a judgment based on extrinsic fraud must establish the existence and non-disclosure of the evidence in question. *See Nw. Bank (Minn.), N.A. v. Symington*, 197 Ariz. 181, 185–87, ¶¶ 15–23 (App. 2000). Aside from Intervenors' assertion that IMH committed extrinsic fraud, Intervenors fail to articulate what evidence IMH intentionally withheld from the court to obtain the Final Judgment. Intervenors' argument therefore fails. *See id.*

¶48 Second, Intervenors argue that Receiver breached its fiduciary duty "owed to Seagoville and MW2." But Intervenors failed to raise this argument in their Post-Judgment Motion. We therefore do not address it. *See Hirsch*, 136 Ariz. at 311 ("The scope of an appeal from a denial of a Rule 60 motion is restricted to the questions raised by the motion to set aside . . . .").

¶49 Finally, Intervenors argue the superior court lacked subject matter jurisdiction to appoint the Receiver. As explained above, *supra* ¶ 26, we reject this argument.

### III.        Attorneys' Fees

¶50 Intervenors and IMH request attorneys' fees under A.R.S. § 12-341.01(A). We award IMH reasonable attorneys' fees on appeal subject to its compliance with ARCAP 21.

### CONCLUSION

¶51 We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA